IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CV-206-FL

| | |
|---|---|
| ESTATE OF BRANDON C. BILLUPS *by and through the Administratrix, Briaoanna C. Billups*, <br><br> Plaintiff, <br><br> v. <br><br> GERALD M. BAKER, *in his individual and official capacity as Sheriff for Wake County, North Carolina*, and JET INSURANCE COMPANY, <br><br> Defendants. | ORDER |

This matter is before the court on defendants' motion to dismiss. (DE 21). The motion has been briefed fully and the issues raised are ripe for ruling. For the reasons stated below, the motion is granted.

## STATEMENT OF THE CASE

Plaintiff initiated this civil rights action in Wake County Superior Court on March 8, 2022 arising out of the suicide of decedent Brandon C. Billups while a pretrial detainee at the Wake County Detention Center. Plaintiff asserts claims for negligence and violation of 42 U.S.C. § 1983 under theories of deliberate indifference to decedent's serious medical needs, unconstitutional policies and practices, and failure to train or supervise, seeking compensatory and punitive damages, interests, costs, and attorneys' fees.

Defendants removed to this court May 23, 2022. Defendants moved to dismiss for lack of jurisdiction or in the alternative to quash service, however, they withdrew the motion thereafter. On August 29, 2022, defendants filed both the instant motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and an answer to the complaint. After obtaining an extension of time, plaintiff filed its response in opposition. Defendants did not reply.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows. Raleigh police arrested decedent on June 30, 2020 and transported him to the Wake County Detention Center, which defendant Gerald M. Barker ("Barker") manages. (Compl. ¶¶ 20-21). Upon arrival, defendant Barker's deputies screened decedent, determined that he was at risk for suicide, and placed him on special watch. (Id. ¶¶ 22, 24). On July 5, 2020, jail personnel left decedent alone and unobserved for 20 minutes. (Id. at ¶¶ 24-25). Decedent hanged himself with a bedsheet and died of cardiac arrest from asphyxiation. (Id. at 29). According to the complaint, a number of detainees have committed suicide previously at Wake County Detention Center. (Id. ¶ 26).

Plaintiff alleges additionally that defendant Jet Insurance Company ("Jet") provided a sheriff's bond for defendant Baker.

## COURT'S DISCUSSION

A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-

pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[1]

B.  Analysis

    1.  Deliberate Indifference to a Serious Medical Need

Plaintiff claims defendant Baker was deliberately indifferent to decedent's serious medical needs. Plaintiff's claim arises under the Fourteenth Amendment to the United States Constitution where decedent was a pretrial detainee at the time of the alleged constitutional violation. See Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988). The Fourteenth Amendment analysis of plaintiff's claim, however, is coextensive with the Eighth Amendment standard applicable to convicted prisoners. See Mays v. Sprinkle, 992 F.3d 295, 300–02 (4th Cir. 2021).

A prison official's deliberate indifference to an inmate's serious medical needs "constitutes cruel and unusual punishment under the Eighth Amendment." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016). In order to state a claim, an inmate must allege a serious medical need and prison officials' deliberate indifference to same. Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). With respect to the first component, "a serious medical need is a condition diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). With respect to the second component, the deliberate indifference standard requires "that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166

---

[1] Throughout this order, internal quotation marks and citations are omitted unless otherwise specified..

(4th Cir. 1995); see Farmer v. Brennan, 511 U.S. 825, 837 (1994). An inmate therefore must establish the prison official's "actual subjective knowledge of both the . . . serious . . . condition and the excessive risk posed by the official's action or inaction." Jackson, 775 F.3d at 178. Deliberate indifference is thus "a particularly high bar to recovery." Iko, 535 F.3d at 241.

Plaintiff's complaint fails to allege facts that would permit a plausible inference that defendant was deliberately indifferent to plaintiff's medical needs. The complaint states in a conclusory fashion that defendant "had actual knowledge of [decedent's] condition . . . based on his past history in custody at the Wake County Detention Center, as well as his deputies' screening and observations of [plaintiff]," (compl. ¶ 49), and that defendant "through his deputies had actual knowledge from [decedent's] prior history in their custody and the results of their screening and observation that [decedent] was at risk of suicide." (Id. ¶ 22). The complaint does not state, however, how knowledge of decedent's condition passed from the deputies on duty to defendant himself. It does not allege, for example, that defendant met or personally observed decedent, that deputies briefed defendant on decedent's condition, or even that defendant was present at the Wake County Detention Center during the period at issue. Where deliberate indifference requires actual knowledge rather than imputed or constructive knowledge, plaintiff has failed to allege facts that would tend to show that defendant knew decedent was at any risk. Plaintiff also fails to state that anyone, including defendant, disregarded the risk that decedent would commit suicide. As the complaint states, "decedent was . . . placed on special watch . . . as a suicide prevention measure," (id. ¶ 7), implying thereby that jail personnel responded to rather than ignored decedent's needs.

Plaintiff argues in its response brief that defendant "knew as a result of multiple other suicides that the policies and practices he had in place . . . to protect . . . detainees . . . from the risk of suicide were ineffective, and he did nothing to improve them despite ability to do so," (DE 27

4

at 5), and that "knowing inaction under these circumstances is the definition of deliberate indifference." (Id.) As explained above, the Supreme Court and Fourth Circuit set forth a definition of deliberate indifference that differs markedly from plaintiff's formulation. See Farmer, 511 U.S. at 837; Shakka, F.3d at 166. The cases cited by plaintiff do not call for a different conclusion. For example, Moskos v. Hardee, which plaintiff cites for the proposition that a supervisor "can be found liable for deliberate indifference if he 'knows of and disregards and excessive risk to inmate health or safety,'" DE 27 at 7 (quoting Moskos v. Hardee, 24 F.4th 289, 298 (4th Cir. 2022)), still requires a plaintiff to show that the defendant comprehended the risk.

Additionally, while plaintiff correctly argues that "[e]xacting specificity as to dates, times, and other ephemera is not required to survive a motion to dismiss," (DE 27 at 4), the court does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet, 591 F.3d at 255 (emphasis added). The court does not consider, for example, plaintiff's allegation that decedent's "vulnerable condition . . was known to," (compl. ¶ 6) defendant where an official's knowledge of a medical condition is an element of the cause of action. Nor can the court accept plaintiff's claim that defendant "through his deputies had actual knowledge from [decedent's] prior history in their custody and the results of their screening and observation that [decedent] was at risk of suicide," (compl. ¶ 22), where it calls for the unreasonable conclusion that a supervisor automatically acquires all the knowledge his subordinates possess.

2. Unconstitutional Polices and Practices

Plaintiff asserts a Monell claim for unconstitutional policies and practices. A sheriff sued in his official capacity "cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Department of Social Services of New York, 436 U.S. 658, 691 (1978); Revene v.

5

Charles County Commissioners, 882 F.2d 870, 873 (4th Cir. 1989) (holding that where the sheriff was the duly delegated policy-maker for county law enforcement, an official capacity claim was "effectively a claim against the governing body of the county"). Instead, a plaintiff asserting a § 1983 claim under Monell must show that the harm suffered was "the result of municipal custom, policy, or practice." Fitzgerald v. Barnstable School Committee, 555 U.S. 246, 258 (2009). "While municipal policy is most easily found in municipal ordinances, it may also be found in formal or informal ad hoc policy choices or decisions of municipal officials authorized to make and implement municipal policy." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). Further, "official policy can be inferred from a municipality's omissions as well as from its acts." Wellington v. Daniels, 717 F.2d 932, 935-36 (4th Cir. 1983). However, "such omissions are actionable only if they constitute tacit authorization of or deliberate indifference to constitutional injuries." Id. at 936. In other words, § 1983 claims "cannot be maintained against a governmental employer in a case where there is no underlying constitutional violation by the employee." Young v. City of Mount Rainier, 238 F.3d 567, 579 (4th Cir. 2001).

As explained above, the instant complaint does not allege a constitutional deprivation sufficient to support a Monell claim. Plaintiff has not alleged facts that, if true, would support an inference that any officer was deliberately indifferent to decedent's medical needs. Where "there is no underlying constitutional violation," id., plaintiff's Monell claim fails.

3. Failure to Train or Supervise

Plaintiff's final theory of recovery under § 1983 rests on an allegation that defendant failed to train or supervise properly Wake County Detention Center personnel. "[T]he the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City

6

of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). Plaintiffs must explain additionally "how any deficiency in training actually caused a constitutional violation." Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999).

Again, plaintiffs have not alleged that any member of the Wake County Detention Center Staff was deliberately indifferent to decedent. Where there is no underlying constitutional violation alleged, plaintiff fails to state a claim upon which relief may be granted. Additionally, where no theory of liability has been advanced for defendant Jet, plaintiff fails to state any claim against it.

4.  Negligence

The court addresses finally plaintiff's claim for negligence. If a remedy for negligence exists in this case, it exists under state law. See, e.g., Bolkhir v. North Carolina State University, 321 N.C. 706, 709 (1988). "A district court may decline to exercise supplemental jurisdiction over a pendent state law claim if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "If the federal claims are dismissed before trial. . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). See also Carlsbad Technology, Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary"). Accordingly, where all federal claims are dismissed, the court declines to exercise supplemental jurisdiction over plaintiff's state law claim.

7

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 21) is GRANTED and this action is DISMISSED for failure to state a claim upon which relief may be granted. The clerk is DIRECTED to close this case.

SO ORDERED, this the 2nd day of March, 2023.

*[signature]*
LOUISE W. FLANAGAN
United States District Judge